**United States District Court**
For the Northern District of California

**\*\*E-filed 6/24/11\*\***

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| NORTH EAST MEDICAL SERVICES, INC., | No. C 10-2433 RS |
| Plaintiff, | **ORDER GRANTING MOTIONS TO DISMISS** |
| v. | |
| CALIFORNIA DEPARTMENT OF HEALTH CARE SERVICES, HEALTH AND HUMAN SERVICES AGENCY, STATE OF CALIFORNIA, et al., | |
| Defendants. | |
| _____ | |
| LA CLINICA DE LA RAZA, INC.., | No. C 10-4065 RS |
| Plaintiff, | |
| v. | |
| CALIFORNIA DEPARTMENT OF HEALTH CARE SERVICES, HEALTH AND HUMAN SERVICES AGENCY, STATE OF CALIFORNIA, et al., | |
| Defendants. | |
| _____ | |

**United States District Court**
For the Northern District of California

## I. INTRODUCTION

Plaintiffs in these related cases operate medical clinics that primarily serve low income and indigent clientele who lack private health insurance. Plaintiffs receive substantial funding for their operations from the federal government through what are known as "Section 330" grants. Additionally, when plaintiffs provide services to persons eligible under the joint federal and state Medicaid program, known in California as Medi-Cal, they are entitled to be reimbursed for their costs by the federal and state governments. In these actions plaintiffs contend that California applied incorrect rules in 2006 and 2007 for calculating the amount of its Medi-Cal reimbursement obligation to plaintiffs with respect to pharmaceutical services that plaintiffs provided to "dual-eligibles"—persons entitled to coverage under both Medi-Cal and Medicare. As a result, plaintiffs contend, they were forced to expend a portion of their Section 330 grants to cover costs that should have been paid by the state. Plaintiffs assert that Congress expressly intended Section 330 grants *not* be used to "subsidize" services provided to Medicaid recipients, and argue that the state's accounting rules had precisely such an effect.

Defendants, who are California state agencies and officers, move to dismiss. They contend, among other things, that the Eleventh Amendment forecloses plaintiffs from seeking in federal court what is, in essence, "recovery of money from the state." In response, plaintiffs attempt to avoid the effect of the Eleventh Amendment by characterizing the monies in dispute as *federal* dollars, which merely are in the temporary possession of the state. Because that characterization is not tenable, the motions will be granted and these actions dismissed.

## II. BACKGROUND

Plaintiff North East Medical Services, Inc., based in San Francisco, focuses on serving the Asian population throughout the Bay Area. Plaintiff La Clinica De La Raza, Inc., headquartered in Oakland, serves communities in several East Bay counties. Each plaintiff is designated as a "federally qualified health center" ("FQHC"), pursuant to Section 330 of the Public Health Services Act, 42 U.S.C. § 254b. As such, plaintiffs receive federal funding for providing certain medical services to underserved areas or populations—the Section 330 grants mentioned above.

**United States District Court**
For the Northern District of California

An FQHC also receives a fixed, per-visit fee from its State Medicaid program that is intended to approximate the FQHC's costs-of-care. 42 U.S.C. § 1396a(bb). Funds are advanced each fiscal year based on anticipated costs, followed by a "reconciliation" process at year's end to determine whether the state must pay additional sums for Medicaid services performed by the FQHC, or conversely, whether the FQHC must return any overpayments.

The dispute in these cases arises from plaintiffs' provision of pharmacy services to persons who are eligible both for Medicare's "Part D" prescription drug benefits and for Medi-Cal. The parties appear to be in agreement that Medi-Cal is, as a general principle, not required to pay for anything that is covered by Medicare. California believes, therefore, that unless a FQHC segregates out its pharmacy services from the per-visit cost advances it obtains each year, then during the year-end reconciliation it must deduct the full amount of any Medicare Part D payments when calculating its entitlement to Medi-Cal reimbursements.

Plaintiffs, in contrast, contend that because the basis of the per-visit cost calculation predates the enactment of Medicare Part D, it reflects "embedded" costs of providing pharmacy services to dual-eligible clients that should be "excised," but *not* simply by offsetting the *entire* amount of payments they receive from Medicare Part D. Under plaintiffs' calculations, they received a higher level of reimbursement when prescription drugs were covered under Medi-Cal rather than by Medicare Part D. Plaintiffs believe that the higher amounts previously reimbursed more accurately reflect their true "costs" of providing those services than the current payments from Medicare Part D do. Based on their assertion that the Medicaid system is designed to ensure FQHCs are *fully* reimbursed for their costs of providing services to Medicaid eligible persons, plaintiffs conclude that California is effectively underpaying its Medi-Cal obligations by insisting that plaintiffs deduct the full amount of Medicare Part D payments during the reconciliation process.

From their conclusion that Medi-Cal is underpaying them, and not reimbursing the full costs of services they provide to Medi-Cal eligible individuals, plaintiffs then reason that they necessarily are paying the balance of those costs by drawing from their Section 330 grants. Plaintiffs assert that Congress has long had the "unmistakable goal" of preventing monies allocated under Section 330 from serving as de facto subsidies to the Medicaid program. Rather, Section 330 funds are intended

1  to be used solely to meet the medical needs of persons who have neither private insurance nor

2  Medicare or Medicaid eligibility.  Accordingly, plaintiffs' theory is that they are entitled to recover

3  additional Med-Cal reimbursements for services they rendered in 2006 and 2007, for which they

4  claim to have had no choice but to utilize Section 330 funds.

5        After 2007 plaintiffs avoided this particular issue by opting to "carve-out" all of their

6  pharmacy services from the Medi-Cal program and to receive payment for Medi-Cal covered

7  services on a directly-billed, fee-for-services basis.  Although plaintiffs vaguely suggest that electing

8  this option is less desirable to them and could lead to unspecified future problems, they expressly

9  acknowledge that they are not suffering any current financial injury.

10

11                              III. DISCUSSION

12        Plaintiffs do not dispute that the Eleventh Amendment generally insulates a state, its

13  agencies, and officers against suits in federal court that seek to compel the state to pay its own

14  money to the claimant. Nor do plaintiffs suggest that the mere fact they have styled their complaints

15  for declaratory and injunctive relief, rather than for damages, is sufficient to avoid that principle. *See*

16  *Taylor v. Westly,* 402 F.3d 924, 929-930 (2005) ("Generally, the Eleventh Amendment shields state

17  governments from money judgments in federal courts, and from declaratory judgments against the

18  state governments that would have the practical effect of requiring the state treasury to pay money to

19  claimants.")  Plaintiffs instead rely on authorities that stand for the unremarkable proposition that

20  not all monies that may be in the *possession* of a state necessarily are state funds, such that the

21  Eleventh Amendment would be implicated.  *See*, *e.g. Taylor,* 402 F.3d at 932 ("Money that the state

22  holds in custody for the benefit of private individuals is not the state's money . . . . the state's

23  Eleventh Amendment immunity from suit against it for damages payable from its treasury has no

24  application.").

25        Were it the case that the Federal Government had provided grants to states to distribute to

26  health services providers, and plaintiffs were making a claim that California had not disbursed funds

27  from those grants in conformity with the law, their argument that the Eleventh Amendment is not a

28  barrier might be tenable.  Indeed, plaintiffs cite cases that, although not involving Eleventh

*Left margin:* **United States District Court**
For the Northern District of California

1  Amendment issues, support the notion that federal grant money retains its federal character until it

2  reaches the ultimate intended beneficiary, and/or is expended for its intended purposes.  *See*, *e.g.*

3  *Palmiter v. Action, Inc.*, 733 F.2d 1244, 1246 (7th Cir. 1984) (judgment creditor of non-profit

4  community service organization not entitled to garnish organization's bank account where all the

5  funds were derived either from direct federal grants, or from federally-funded state grant programs);

6  *In re Joliet-Will County Community Action Agency*, 847 F.2d 430 (7th Cir. 1988) (federal and state

7  grant monies held by non-profit not part of its estate in bankruptcy).

8      Here, however, plaintiffs do not contend that the federal government *actually* provided funds

9  to California for redistribution to entities like them.  Rather, plaintiffs are relying on a fiction—their

10  contention that the *effect* of California's alleged failure to pay its full Medi-Cal obligation is

11  tantamount to using Section 330 grants as a subsidy.  Even if plaintiffs are correct regarding what

12  Medi-Cal should have paid them, that would not somehow transform the character of the monies

13  plaintiffs are seeking from state to federal dollars.  Under plaintiffs' construction, the federal

14  government provided Section 330 grants *to plaintiffs* to subsidize their provision of medical services

15  to Medi-Cal eligible persons. No money in the form of a subsidy or otherwise flowed from the

16  federal government to the state.  If plaintiffs are correct, while California retained for its own

17  purposes money that it should have paid to them, it remained the state's money.

18      In essence, plaintiffs are saying that they themselves spent monies given to them by the

19  federal government under Section 330 when they should not have found it necessary to do so.

20  While that might mean, if correct, that California received a subsidy to its Medi-Cal program in a

21  metaphorical sense, the money that California should have paid—the money plaintiffs seek to

22  recover in this action—is still California's money, that would have to be paid from its coffers.

23  Because the Eleventh Amendment precludes this Court from exercising jurisdiction over such

24  claims, the motions to dismiss these cases must be granted.[1]

---

25  [1]   Defendants also move for dismissal under Rule 12(b)(6), arguing that plaintiffs' contentions that

26  they were not properly reimbursed fail as a matter of law.  While any such a dismissal technically would be only for failure to state a claim, in these circumstances it would effectively be an

27  adjudication on the merits in favor of defendants.  Given that there is no federal jurisdiction to decide the merits *against* defendants, it seems inappropriate to decide that issue.  Nor is it necessary

28  to reach defendants' further contention that plaintiffs failed to exhaust all administrative remedies.

IV.  CONCLUSION

Defendants' motions to dismiss for lack of subject matter jurisdiction are granted.  The Clerk shall close the files.

IT IS SO ORDERED.

Dated:  6/24/11

_____
RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE

United States District Court
For the Northern District of California

6